UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

RANDAL E. REYNOLDS,                    )
                                       )
         Plaintiff,                    )
                                       )
    v.                                 )      CIVIL NO.  3:13cv1354
                                       )
CAROLYN COLVIN, Acting                 )
Commissioner of Social Security,       )
                                       )
         Defendant.                    )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social

Security Act.  42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3).  Section

205(g) of the Act provides, <u>inter alia</u>, "[a]s part of his answer, the [Commissioner] shall file a

certified copy of the transcript of the record including the evidence upon which the findings and

decision complained of are based.  The court shall have the power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he

findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law

Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: coronary artery disease; hypertension; mild degenerative changes of the lumbar and cervical spine; peptic duodenitis (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he may occasionally climb ramps, stairs, ladders, ropes, and scaffolds or kneel, crouch, and crawl.  He may frequently balance and stoop.  He must avoid concentrated exposure to extreme cold.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on March 11, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-24).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on July 28, 2014. On November 17, 2014, the defendant filed a memorandum in support of the Commissioner's decision, and on December 30, 2014, Plaintiff filed his reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental

Social Security ("SSI") on January 3, 2011, alleging a disability onset date of March 15, 2009. (Tr. 18) The Disability Determination Bureau (DDB) denied the Plaintiff's claims on March 9, 2011. (Tr. 18) He requested reconsideration, but his claims were denied again on April 29, 2011. Id. Plaintiff filed a request for an administrative hearing on May 31, 2011. Id. On May 22, 2012, Plaintiff appeared in Fort Wayne, Indiana for a video hearing before ALJ Valencia Jarvis of the St. Louis, Missouri, Office of Disability Adjudication and Review (ODAR) National Hearing Center. Id. On June 15, 212, ALJ Jarvis issued an unfavorable decision. Id. Plaintiff filed a request for review by the Appeals Council of the Office of Disability Adjudication and Review which declined to review his decision on October 22, 2013.

Plaintiff was born on March 11, 1964. At the time of the administrative hearings, he was 45 years of age. (Tr. 23) His past relevant work was as a truck driver. (Tr. 23)

On December 18, 2006, Plaintiff had an MRI of his left elbow performed due to his complaints of generalized elbow pain. (Tr. 587) The overall impression was partial tear of the common extensor tendon insertion, fraying or granulation of fibrotic tissue associated with the lateral collateral ligament. Id. Imaging of his cervical spine also found spondylosis of his cervical spine at C4-5 and C5-6, mild retrolisthesis of C4 on C5 which reduces with flexion. (Tr. 588) Imaging also noted dynamic retrolisthesis of C5 on C6 with extension. Id. The MRI of the cervical spine found right side disc protrusion at C5-6 with associated osteophytic spur indenting the cord slightly and displacing it to the left and causing mild to moderate narrowing of the right foramen, left sided disc protrusion at C4-5 causing moderate narrowing of the left foramen and mild mucosal thickening in the maxillary sinuses bilaterally. (Tr. 590) An MRI of Plaintiff's lumbar spine noted mild disc degenerative disease at L2-3 with mild disc space narrowing and

desiccation. (Tr. 589) There was also mild posterior broad-based disc protrusion, but no central stenosis, lateral recess or foraminal stenosis. Id.

On January 2, 2010, Plaintiff underwent a physical examination by Dr. Brandi Rudolph on behalf of the Social Security Administration. (Tr. 451-452) Dr. Rudolph's physical examination noted mild tenderness in the thoracic area and his muscle strength was 4+/5. (Tr. 451) Dr. Rudolph's overall clinical impression was back pain, myocardial infarction status post stents placement and vomiting. (Tr. 451-452)

Plaintiff had an initial evaluation with Dr. Julie Chao in October 2010 for his complaints of neck and back pain. (Tr. 577) Plaintiff described his pain as constant with intermittent sharp shooting pains that radiate to his right toes and both arms. Id. He reported numbness in his third and fourth finger of both hands with right toe numbness and weakness. Id. In his new patient health history, Plaintiff stated that his pain was related to an accident when he was young, that it was made better with pain medicine, made worse by "everything" and that he also has numb hands, arms and legs. (Tr. 581) His pain levels were described as being 6 out of 10 at best and 10 out of 10 at worst. (Tr. 582) Dr. Chao's overall impression was lower back radiculpathy, cervical radiculpathy, and myofascial pain syndrome. (Tr. 580) Dr. Chao prescribed medications and ordered a pain block to be performed at the St. Joseph Hospital. Id. Dr. Chao's physical examination of Plaintiff in November 2011 noted positive tender points in his lower back which was worse at the left S2, with limited range of motion and pain in the lower back area. (Tr. 571) She also noted pain in his hips and right leg with positive straight leg raises. Id. Her diagnoses were low back pain, lumbar radiculopathy, DDD of lumbar spine, limb pain and sciatic. (Tr. 569) On December 13, 2010, Plaintiff was again seen by Dr. Chao for his complaints of pain. (Tr. 568)

Plaintiff noted that he was having pain in his lower back and right leg which was constant. Id. Dr. Chao's physical examination noted that Plaintiff had diffuse tenderness in his lower back with limited range of motion and positive tender points. Id. She also noted positive sitting straight leg raises on the right. She diagnosed him with low back pain, lumbar radiculopathy, DDD of lumbar spine, limb pain and sciatic. (Tr. 569) Id. They discussed Plaintiff's options including a spinal cord stimulator. (Tr. 570)

Plaintiff was seen in January for his complaints of constant, daily pain in his neck, shoulders and lower back. (Tr. 565) He reported that his sleep and activity level was worse from his previous visit. Id. Dr. Chao's physical examination noted "neck pain around joints levels" and limited range of motion. Id. Dr. Chao also noted diffuse pain in Plaintiff's back with positive tender points, with positive straight leg raises on the right. Id. Dr. Chao diagnosed Plaintiff with low back pain, lumbar radiculopathy, DDD lumbar, limb pain, neck pain and cervical radiculopathy. (Tr. 566) She then noted that they will do a spinal cord stimulator when Plaintiff has insurance. (Tr. 567) Plaintiff presented again with complaints that his left knee had swollen up and pain in his neck, shoulder and lower back which was an 8 out of 10 in February. (Tr. 680) Dr. Chao noted some tenderness in Plaintiff's neck and shoulders and diffuse pain in the tender points and pain in his right hip, leg, knee and ankle with positive straight leg raises. Id. She further noted that he limped when he walked. Id.

On February 19, 2011, Plaintiff had a medical evaluation, at the request of the Social Security Administration, performed by Michael Johansen, D.O. (Tr. 591 – 592) Plaintiff stated that he was seeking disability due to pain in his entire back which was worse in his neck and low back. (Tr. 591) Plaintiff reported he had to stop working as a truck driver due to his inability to sit

for long periods and inability to lift heavy objects. (Tr. 591) Dr. Johansen's physical examination noted that Plaintiff appeared mildly drowsy but did not appear to be in acute distress. Id. Plaintiff had diffuse tenderness to palpation in the midline of his cervical spine. Id. Dr. Johansen noted that Plaintiff's gait is slow and deliberate and appeared to be in some pain without favoring either side. Id. He was unable to tandem walk or walk on heels but was able to briefly toe walk. Id. Plaintiff could not perform a full squat but was able to get on and off the examination table. Id. Dr. Johansen found diffuse tenderness to palpation of Plaintiff's low back and upper areas of sacral spine and into the lateral areas of his pelvis. (Tr. 592) Plaintiff's motor strength was +5/5, straight leg raises were negative bilaterally and normal grip strength and fine finger manipulation. Id. Dr. Johansen's overall impression was chronic back pain, diffuse musculoskeletal pain including hips, shoulders and knees, hypertension and coronary artery disease. Id.

Plaintiff later reported to Dr. Chao that he was experiencing pain at a level of 8 out of 10 in his head, neck, right shoulder, lower back and right leg. (Tr. 674) Dr. Chao noted diffuse neck spasms with intact range of motion. Id. Dr. Chao noted Plaintiff experienced pain in the right hip and leg but had a normal gait. Id. On March 4, 2011, Plaintiff presented with complaints that his right shoulder, hands and feet were numb. (Tr. 677) Dr. Chao noted that Plaintiff's right shoulder was unstable, that he had diffuse pain which was worse at right and left sciatic joints. Id. Dr. Chao also noted pain in the right hip and leg with positive edema and slow gait. Id.

The DDB examiner, B. Whitley, M.D., issued a residual functional capacity assessing that Plaintiff retained the capacity to occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday and unlimited push/pull. (Tr. 595) With respect to postural limitations, Dr. Whitley found that Plaintiff could

occasionally climb ramps, stairs, ladder, ropes, and scaffolds, kneel, crouch and crawl, but could frequently balance and stoop. (Tr. 596) Dr. Whitley found no manipulative or visual limitations. (Tr. 597) He found that Plaintiff should avoid concentrated exposure to extreme cold but no other environmental limitations. (Tr. 598)

On April 28, 2011, Plaintiff was seen by Dr. Chao where he complained of right lower leg pain and hip pain. (Tr. 671) Dr. Chao noted that Plaintiff was positive for tender points in his lower back with decreased range of motion and positive straight leg raises on the right. Id. Plaintiff reported pain level 5 on a scale of 10. (Tr. 668) Dr. Chao noted diffuse lower back pain with positive tender points, pain in the right hip and positive straight leg raises on the right. Id. In June, Plaintiff reported to Dr. Chao that he was having pain from his toes of his right foot up his front leg, around and up his back legs of both hips. (Tr. 665) Dr. Chao noted that Plaintiff had severe pain on the left side of his lower back with pain noted in his left hip and leg and positive straight leg raises on the left. Id.

Plaintiff also reported that he had been hospitalized recently and underwent a heart catherization. (Tr. 662) Plaintiff reported that he was told he has high stress and should be on anti-anxiety medications and rated his pain as being 6 out of 10. Id. Dr. Chao noted diffuse pain with positive tender points, with pain in the right hip and leg and positive straight leg raises. Id. Dr. Chao also found limited range of motion in Plaintiff's left shoulder. Id. Dr. Chao added klonopin to Plaintiff's medication regime. (Tr. 664) Later, Dr. Chao examined Plaintiff for his complaints of neck and back pain. (Tr. 659) Dr. Chao found tenderness in Plaintiff's right bicep tendons, diffuse pain at tender points in his back, pain in his right hip and leg and positive right straight leg test. Id.

On September 22, 2011, Plaintiff presented to Dr. Chao who noted that Plaintiff was crying and reported a custody battle regarding his son. (Tr. 656) Plaintiff described his pain as being constant in his lower back and right leg at a level of 7 out of 10. (Tr. 656) Dr. Chao's physical examination of plaintiff found positive tender points, positive pain in the right hip and leg. Id. Plaintiff reported to Dr. Chao that his pain was worse at night causing him to wake up at night with pain in his right hip and leg. (Tr. 653) Dr. Chao's physical examination noted that Plaintiff was positive for pain in his right hip and leg, with positive tender points and positive straight leg raise and decreased sensation on the right. Id. They discussed a spinal cord stimulator and Plaintiff indicated he wanted to wait until he had insurance. (Tr. 655) In November, Plaintiff reported constant daily pain that he rated at an 8 out of 10. (Tr. 650) Dr. Chao's physical examination of plaintiff found positive diffuse tender points with positive straight leg raises on the right and decreased sensation on the right. Id. Dr. Chao's overall diagnoses were low back pain, lumbar radiculopathy, sciatic and limb pain. (Tr. 651)

On February 23, 2012, Dr. Chao stated, "It is my medical opinion that the above mentioned patient is currently disabled and is expected to be disabled for the next 12 months. Any drug and/or alcohol abuse is not a contributing factor material to my disability determination. Absent of any drug and/or alcohol abuse, the patient would still be limited from performing any substantial gainful activity on a sustained basis." (Tr. 727)

On February 24, 2012, Plaintiff had another MRI of his cervical spine. (Tr. 728-729) The MRI results noted uncovertebral spurring with mild facet arthropathy at C4-5 and no significant central canal foraminal narrowing. (Tr. 728) The MRI results noted, at C4-5, degenerative changes of the end plate, lateral left/medial foraminal uncovertebral spur abutting the left C5

nerve root. (Tr. 729) There was no right C5 nerve root impingement or ventral cord abutment. Id. The MRI results noted mild-severe central stenosis, no cord edema or deformation despite abutment. Id. At C5-6, the MRI results noted right paracentral large disc protrusion abutting the cord with severe central stenosis and cord deformation. Id. There was no edema but there was likely C6 nerve root impingement. Id. The MRI results also found mild facet arthropathy, mild left foraminal narrowing and no left C6 nerve root impingement. Id. The MRI results noted frontal uncovertebral spurring at C6-7, right greater than left with moderate facet arthropathy and severe right and mild left foraminal narrowing likely secondary impingement on the right and mild central stenosis. Id. The overall impression was multilevel degenerative changes as noted above with nerve root impingement and cord deformation. Id. A CT scan performed that day found interverterbral disc height loss at C4-5 with mild endplate sclerosis and moderate left C4-5 foraminal narrowing and mild to moderate left C6-7 foraminal narrowing. (Tr. 735) Plaintiff then had an MRI of his lumbar spine which found diffuse bulge and mild degenerative endplate changes at L2-3 with marginal osteophytosis abutment on the descending L3 nerve roots and mild abutment on the exiting L2 nerve roots. (Tr. 731) At L3-4, the MRI results noted mild bulge diffusely, ventral central descending L5 nerve root and L4 nerve impingement left foraminal protrusion that abuts the exiting left L3 nerve root but no right L3 nerve root impingement. At L4-5, the MRI results noted found mild bulge and mild face arthropathy with no direct central or foraminal nerve root impingement. (Tr. 732) The overall impression was multilevel lumbar spine degenerative change. Id.

On July 20, 2012, Plaintiff had right transforaminal lumber epidural injections at L4-5, right transforaminal lumbar epidural injection at L5-S1, and cervical epidural injection performed

by Dr. Chao. (Tr. 748)

On May 22, 2012, Plaintiff presented for a hearing at the Fort Wayne Office of Disability

Adjudication and Review. (Tr. 33) ALJ Jarvis appeared via video-conference from the St. Louis

National Hearing Center. Id. Plaintiff testified that he has throbbing pain in his spine from his belt

line to the bottom of his shoulder then from his neck up to his skull. (Tr. 38) He also stated that it

will go down the back of his right leg and wraps around then across the top of his foot. Id.

Plaintiff further explained that the pain occasionally feels like someone is stabbing him with a

knife. Id. Due to this, he reported he was not able to reach overhead with his right arm and only

occasionally with his left arm. Id.  Plaintiff opined he could pick up 15 pounds. (Tr. 39) He

reported pain with movement of his neck and that at the end of the day "it feels like my head's

going to fall of the shoulders….It's like I got to lay it down on a pillow or something." Id. With

respect to the lumbar spine pain, Plaintiff reported that it generally radiates down his right leg but

will sometimes radiate down his left leg. (Tr. 40) He then noted:

> Every day almost. I walk – I sit down, I get – it starts hurting, I get up and walk
> around a little bit. Then I got to sit back down and I got to put my legs up, then I
> got to lay down. It's all the time. (Tr. 40)

Plaintiff reported that he can sit for 15 minutes to a half-hour and can slowly walk about a

sixteenth of a mile but would have to rest to come back. (Tr. 41) He estimated that he would be

able to stand in one spot for 10 minutes. (Tr. 42) Plaintiff then reported that he feels chest pains

"all the time" but has medication that helps with the pain. Id. He reported that without his

medications his back pain would be between 8-10 and with the medications it is reduced to an 8

or 9. (Tr. 43) Plaintiff reported that he relies on his wife for help with activities of daily living

including helping him get up in the morning, putting on his shoes and socks, showering, the

cooking and cleaning and taking care of his dogs. (Tr. 44) He reports that he spends most of his

days laying in bed or in his chair. Id. Plaintiff testified that he sees Dr. Chao for medication and

injections. (Tr. 54) He also reported that he was to have psychological evaluation so that he could

have a spinal stimulator installed. Id. When asked, Plaintiff reported that his greatest difficulty is

his back, hips and neck. (Tr. 59) He felt his heart just made him get tired faster and reduced his

endurance. Id.

On June 15, 2012, ALJ Jarvis issued an unfavorable decision regarding Plaintiff's claim

for disability. (Tr. 15 -24) At Step One, she found that Plaintiff met the insured requirements of

the Social Security Act through December 31, 2014. (Tr. 20) At Step Two, she found that he has

not engaged in substantial gainful activity since March 15, 2009, his alleged onset of disability.

Id. At Step Three, she found that Plaintiff's severe impairments were coronary artery disease,

mild degenerative changes of the lumbar spine and cervical spine and peptic duodenitis. Id. The

ALJ then found that Plaintiff did not meet or equal any listing. Id. With respect to listing 1.04 she

noted "[t]he medical evidence does not establish the requisite evidence of nerve root

compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04." (Tr.

20-21) She then found that Plaintiff retained the ability to perform light work as defined by 20

CFR 404.1567(b) but would only occasionally climb ramps, stairs, ladders, ropes and scaffolds

or kneel, crouch, and crawl. Id. He may frequently balance and stoop. He must avoid

concentrated exposure to extreme cold. Id. The ALJ then determined Plaintiff was unable to

perform his past relevant work but retained the ability to perform the work of a cleaner,

assembler and packager. (Tr. 23-24)

In support of remand or reversal, Plaintiff first argues that the Commissioner erred at Step

13

Three due to perfunctory analysis and failing to obtain an updated expert opinion. Plaintiff claims that the ALJ erred by failing to adequately articulate why Plaintiff's multi-level degenerative disc disease with nerve root impingement, cord deformation and nerve root abutment did not meet or equal the requirements of 1.04. Plaintiff contends the ALJ also failed to solicit an updated expert opinion on equivalence despite the admission of evidence which reasonably raised the issue and which reasonably may have altered the opinions of the state agency medical consultants on equivalence.

At Step Three, the ALJ is required to determine whether the claimant meets or equals any of the listed impairments found in the Listing of Impairments, found in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004); 20 C.F.R. § 404.1520 (a)(4)(iii). For each listed impairment, there are objective medical findings and other specific requirements that must be met to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(3), 416.925(c)(2)-(3). When a claimant satisfies the criteria to meet a listed impairment, that person is deemed disabled and is automatically entitled to benefits. Barnett, 381 F.3d at 668; 20 C.F.R. §§ 404.1525(a), 416.925(a); 404.1525(c)(3), 416.925(c)(3).

A claimant is also disabled if his impairment(s) is the medical equivalent of a listing, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a). Medical equivalence exists when a claimant does not exhibit one or more of the findings specified in the particular listing, or a claimant exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing. In such cases, a claimant's impairment "is medically equivalent to that listing if you have other findings related to

your impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526 (b)(1). A finding of medical equivalence is also warranted when a claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality. 20 C.F.R. § 416.926; 20 C.F.R. § 404.1526.

As noted, the Plaintiff maintains the ALJ erred by failing adequately articulate why Plaintiff's degenerative disc disease, nerve root impingement, cord deformation and nerve root abutment does not meet the listing 1.04A. Listing 1.04A presumes disability for claimants that demonstrate evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)". 20 C.F.R. § Part 404, Subpart P, Appendix 1, § 1.04.

An ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. Barnett, 381 F.3d at 668. The Seventh Circuit has held that "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." Kastner v. Astrue, 697 F.3d 642, 646 (7th Cir. 2012) (quoting Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002)). The court wrote:

> Because the only evidence in the record demonstrated significant limitations in Kastner's range of motion, the ALJ's contrary conclusion is peculiar and unexplained. An unarticulated rationale for denying disability benefits generally requires remand. . . We have repeatedly held that an ALJ must provide a logical bridge between the evidence in the record and her conclusion.

Id. at 648 (citations omitted). The Seventh Circuit and district courts have reversed ALJ determinations on the basis of a poorly articulated listing analysis. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003) (reversing ALJ's findings which were "devoid of any analysis that would enable meaningful review"); Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002)("By failing to discuss the evidence in light of Listing 112.05's analytical framework, the ALJ has left this court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing"); Hiatt v. Colvin, No. 11-cv-1282, 2013 U.S. Dist. LEXIS 45784 at *12-16 (S. D. Ind. March 29, 2013)("The ALJ also committed legal error by not sufficiently articulating her evaluation of the evidence against the criteria of Listing 1.04(C) and by not explaining an accurate and logical relationship between the evidence and her ultimate findings.")

Plaintiff argues that the ALJ discussed Listing 1.04, but failed to build a logical and accurate bridge between the evidence and her finding that the claimant did not meet or medically equal listing 1.04. The ALJ wrote:

> Although the claimant has "severe" impairments, the record does not establish that the claimant is subject to an impairment or combination of impairments which meets or equals the requirements of any section of the Listing of Impairments in Appendix of the Regulations (20 CFR, Subpart P, Appendix 1), including Listing 1.04. The medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04. Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b). Further, no medical expert has opined that the claimant's impairments equal any Listings.

(Tr. 20-21)

Plaintiff points out that the ALJ wrote initially that there is no evidence of nerve root compression in her Listing analysis. (Tr. 20) Plaintiff claims that the ALJ provided no other

16

explanation or analysis to support her perfunctory conclusion that Plaintiff did not meet or equal

the Listing 1.04. Plaintiff does acknowledge that later in her decision the ALJ notes that there is

an MRI which "suggested nerve root impingement and cord deformation." (Tr. 22) The ALJ then

went on to opine "…there were no EMG results that confirmed radiculopathy." Id. Plaintiff

argues that this conclusion is flawed and not in keeping with the Listings evaluation criteria.

Plaintiff notes that under Listing 1.00(C) (1), diagnosis and evaluation should be evaluated as

follows:

> Diagnosis and evaluation of musculoskeletal impairments should
> be supported, as applicable, by detailed descriptions of the joints,
> including ranges of motion, condition of the musculature (e.g.
> weakness, atrophy), sensory or reflex changes, circulatory deficits,
> and laboratory findings, including findings on x-ray or other
> appropriate medically acceptable imaging. **Medically acceptable
> imaging includes, but not limited to, x-ray, computerized axial
> tomography (CAT scan) or magnetic resonance imaging
> (MRI), with or without contrast material, myelography, and
> radionuclear bone scans.** "Appropriate" means that the technique
> used is the proper one to support the evaluation and diagnosis of
> the impairment. (emphasis added) (20 CFR § Part 404, Subpart P,
> Appendix 1, § 1.00(C)(1))

Electrodiagnostic procedures are further discussed in 1.00(C)(3) which explains

"[e]lectrodiagnostic procedures may be useful in establishing the clinical diagnosis, but do not

constitute alternative criteria to the requirements of 1.04." 20 CFR § Part 404, Subpart P,

Appendix 1, § 1.00(C)(3). Plaintiff argues that it is clear from the evaluation criteria that an MRI

is an "appropriate medically acceptable imaging" to satisfy the listing and does not require

confirmation by an EMG. Rather, the EMG is merely "useful" in determining the overall

diagnosis and not required to confirm "appropriate" objective testing results. In that regard, the

MRI that the ALJ refers to shows impingement of the nerve root at several levels in Plaintiff's

cervical and lumbar spine. The MRI demonstrates at C5-6 there is severe central stenosis, cord deformation and "likely C6 nerve root impingement." (Tr. 729) Further evidence includes a spur abutting the left C5 nerve root with mild-severe central stenosis, mild abutment on the L2 nerve root and nerve root impingement at L5 and L4 and abutment of the left L3 nerve root. (Tr. 729, 731) Thus, Plaintiff argues that it is clear from the MRI that there is evidence of "nerve root compression" in the record which requires an evaluation as to whether the Plaintiff meets or medically equals the listing 1.04A. Plaintiff claims that the ALJ's flawed logic is itself a basis for remanding her determination that Plaintiff's neck and back impairments do not meet the Listing 1.04A. *See* Carradine v. Barnhart, 360 F.3d 751, 756 (7th Cir. 2004) ("an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws").

Plaintiff contends that there is substantial evidence which supports finding that he meets or medically equals Listing 1.04A. In addition to the MRI evidence showing nerve root compression at multiple levels, Plaintiff has been treating with Dr. Chao, a pain management specialist, for complaints of neck pain with numbness in his hands and back pain with radiation to his right and left leg. (Tr. 565-586, 650-726) With respect to his lumbar spine, Dr. Chao noted positive straight leg raises at almost every visit and decreased sensation in his lower limbs. Id. Further the consultative examiner noted diffuse tenderness in his cervical and lumbar spine with reduced range of motion in the lumbar spine. (Tr. 592-593) Plaintiff concludes that the ALJ therefore "committed legal error by not sufficiently articulating her evaluation of the evidence against the criteria of Listing [1.04A] and by not explaining an accurate and logical relationship between the evidence and her ultimate findings." Hiatt, 2013 U.S. Dist. LEXIS 45784 at *12-16.

As stated, "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." Kastner, 697 F.3d at 646. Plaintiff contends that the evidence discussed above reasonably implicates the intent of Listing 1.04A as it shows nerve root compression with neuro-anatomic distribution of pain, limited motion of the spine, sensory loss and positive straight-leg raises. Plaintiff further contends that this Court cannot engage in meaningfully review of the ALJ's determination that his cervical and lumbar spinal problems do not meet the intent of listing 1.04A.

Plaintiff next argues that the ALJ also committed legal error by failing to consult a medical expert before determining Plaintiff's combined impairments did not equal Listing 1.04A during the adjudicative period. SSR 96-6p provides that an adjudicator "must obtain an updated medical opinion" when she determines either "the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable" or when "additional medical evidence is received that . . . may change the State agency medical or psychological consultant's finding" regarding equivalence. (emphasis added) Several courts, have found that a breach of the duty to elicit fully informed expert testimony on equivalence warrants remand. *See* Simpson v. Colvin, 2013 U.S. Dist. LEXIS 106894 at *16-17 (S.D. Ind. July 31, 2013); *See also* Dant v. Comm'r of Soc. Sec., 2012 U.S. Dist. LEXIS 137494 at 6-8* (S.D. Ohio 2012) (finding error where ME testimony raised question of equivalence and ALJ failed to elicit testimony on the question); Johnson v. Barnhart, 66 F. App'x 285, 288-289 (3d Cir. 2003) (reversing ALJ decision should be reversed for failing to consult a Medical Expert as required by SSR 96-6p); Maniaci v. Apfel, 27 F. Supp. 2d 554, 558-559 (E.D. Pa. 1998) (finding the ALJ failed to adequately develop the record when the evidence "fairly raised the question" of

whether the claimant met a Listing, yet did not obtain Medical Expert testimony on the issue); Honeysucker v. Bowen, 649 F. Supp. 1155, 1158-1160 (N.D. Ill. 1986) (same).

Plaintiff argues that in the present case the ALJ violated her duty to elicit an updated expert opinion before finding his impairments did not equal Listing 1.04A. The state agency consultants last reviewed the claimant's file in April 28, 2011. (Tr. 604) But in February of 2012, the claimant underwent MRI imaging of his cervical and lumbar spine which found multi-level stenosis, nerve root impingement and cord deformation as discussed *supra*. (Tr. 728-732) Plaintiff contends that this evidence reasonably raised the question of equivalence and probably would have altered the consultants' opinions about whether the claimant's impairment(s) equal the intent of any listed impairments, and thus the ALJ erred by failing to solicit an updated expert opinion on equivalence. Simpson, 2013 U.S. Dist. LEXIS 106894 at *16-17. This is especially important as the ALJ gave "significant" weight to the opinions of the DDB examiners, noting "…as consultants with the Administration, the examiners are certainly well versed in the assessment of functionality as it pertains to the disability provision of the Social Security Act." (Tr. 22) The ALJ placed great emphasis on the opinions of these examiners who did not have the opportunity to review the MRI imaging which showed multiple level nerve root impingement, cord deformation and canal stenosis and therefore were unable to make a finding on the entirety of the medical evidence. Plaintiff claims an updated opinion was needed to ascertain the impact these MRIs have on the evaluation of his conditions and whether he now met or medically equaled the listing. Plaintiff concludes that the ALJ's finding that the his impairments do not equal the intent of a listed impairment is therefore not supported by substantial evidence.

In response, the Commissioner claims that Plaintiff has not shown that his back

impairment satisfied all the elements set forth in Listing 1.04A. The Commissioner concedes

Plaintiff has produced evidence of a disorder of the spine resulting in compromise of a nerve root

(and the spinal cord itself) with multiple instances of nerve root compression, limited motion in

the spine, and positive straight leg raising.  However, the Commissioner contends that

"complaints of numbness do not satisfy the requirement for clinical findings of sensory

abnormalities".  Yet the Commissioner acknowledges that "Dr. Chao noted. . . decreased

sensation in [Plaintiff's] lower limbs."  It is unexplained why Dr. Chao's clinical observation

would not qualify as the "clinical findings of sensory abnormalities".

    The Commissioner further argues that the "great deal of pain" Plaintiff was experiencing

was insufficient to satisfy the listing's requirement of a "neuro-anatomic distribution of pain"

because it "was not described as following certain particular nerve distributions."  The

Commissioner has not explained why such a detailed description of a claimant's pain pattern is

required.  The plain language of the relevant regulation only requires a "neuro-anatomic

distribution of pain".  20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 1.04A.  As Plaintiff points out,

the record documents his "complaints of neck pain with numbness in his hands and back pain

with radiation to his right and left leg."

    The Commissioner also attempts to minimize Plaintiff's profound degenerative

pathologies affecting multiple levels of Plaintiff's spine by asserting that objective testing

"showed impingement or possible impingement only at certain levels of the cervical and lumbar

spines".  However, as Plaintiff points out, the plain language of Listing 1.04A only requires

nerve root compromise at one level of the spine so long as such compromise results in clinical

findings sufficient to satisfy the other elements contained therein.   Confusingly, the

Commissioner argues that "the record is almost totally devoid of clinical findings of motor loss . . . or significant findings of reflex or sensory loss", yet the Commissioner acknowledges that during Plaintiff's consultative examination he "could not tandem walk or walk on his heels, and could only briefly walk on his toes. He could not perform a full squat. . . ." As Plaintiff notes, the Commissioner's own regulations indicate these clinical findings may qualify as "evidence of significant motor loss." 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 1.00E. Moreover, none of the Regulations for Listing 1.04A requires evidence of "significant" sensory loss. This court agrees with Plaintiff that a remand is required with respect to the issue of whether Plaintiff has established that his lower back impairment meets all the criteria of Listing 1.04A.

With respect to equivalence, the Commissioner concedes that the state agency physicians never saw the February 2012 MRIs of Plaintiff's lumbar and cervical spine, but suggests that this objective testing "does not indicate that Plaintiff's condition changed for the worse after the reviewing physicians set forth their opinions". Plaintiff, in his reply, notes that the only diagnostic imaging the state agency consultants could have seen was the 2006 MRIs. At that time, the MRI of Plaintiff's cervical spine showed a right side disc protrusion at C5-6 with associated osteophytic spur indenting the cord slightly and displacing it to the left and causing mild to moderate narrowing of the right foramen and a left sided disc protrusion at C4-5 causing moderate narrowing of the left foramen. (Tr. 590). The 2006 MRI of Plaintiff's lumbar spine revealed mild disc degenerative disease at L2-3 with mild disc space narrowing and desiccation without demonstrating any neurological pathologies. (Tr. 589). In contrast, the February, 2012 MRI of Plaintiff's cervical spine showed that he was now suffering from a large disc protrusion causing severe central canal stenosis and cord deformation at C5-C6 as well as severe right sided

foraminal narrowing due to previously undocumented nerve root impingement at C6-7 (Tr. 729).

Additionally, the 2012 lumbar MRI revealed evidence of multiple neurological pathologies

which were never seen by the state agency consultants. (Tr. 731). As such, Plaintiff argues that

the Commissioner's assertion that this diagnostic testing "does not change the state agency

doctor's evaluations of the clinical evidence" has no merit.    Again, the Plaintiff is correct and,

clearly, the 2012 MRI should be properly evaluated upon remand.

Lastly Plaintiff argues that the ALJ further erred by improperly dismissing his allegations

of difficulty with lifting, sitting, standing, walking and other postural activities required for work.

In assigning a Residual Functional Capacity, the ALJ must consider the claimant's testimony, the

objective medical evidence, and opinions from medical sources. 20 C.F.R. § 404.1545(3). Social

Security policy requires the adjudicator to articulate "specific reasons for the finding on

credibility, supported by the evidence in the case record." SSR 96-7p. A court will not disturb the

weighing of credibility so long as the determinations are not "patently wrong." Clifford v. Apfel,

227 F.3d 863, 872 (7th Cir.2000); Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir.2006)

(citing Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir.2004)). However, when the credibility

determination rests on "objective factors or fundamental implausibilities rather than subjective

considerations [such as a claimant's demeanor], appellate courts have greater freedom to review

the ALJ's decision." Clifford, 227 F.3d at 872. A court should reverse a credibility determination

if it finds that the rationale provided is "unreasonable or unsupported." Prochaska, 454 F.3d at

738 (citing Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir.2006)).

During the hearing, the Plaintiff testified to his difficulties with standing, walking, sitting,

lifting and other postural activities due to the pain associated with his neck and back. The ALJ

disregarded his testimony because it "is not entirely supportable on the basis of his activities of daily living and the medical evidence in the record." (Tr.22) The ALJ seems to focus on the fact that the Plaintiff claimed pain in his cervical and thoracic spine but stated that he can lift 20-30 pounds and "failed to identify any hand impairments that would have affected his ability to grip." Id.

Plaintiff argues that this rationale is erroneous and based on a selective and illogical discussion of the relevant medical evidence. First of all, the Plaintiff's statements are consistent with a finding of someone unable to sustain work. While the Plaintiff did state in his Function Report that he was able, at that time, to lift 20-30 pounds, he also stated he was unable to stand for more than five minutes, walk more than 5-10 minutes, sitting for five minutes and after using them for 30-40 minutes he will have to rest his hand due to numbness. (Tr. 209) He further reported that he has to have his wife help put on his sock and occasionally help with dressing and that she occasionally helps him out of bed. Id. Further, while Plaintiff reported he helps with household chores, he stated that he does these "till can't do no more then rest and come back to it." (Tr. 206) When explaining why he doesn't do some of the house and yard work he further stated, "arms and hands go numb, leg and back hurts and get real tired." (Tr. 207) Plaintiff argues that while lifting 20-30 pounds may allow for some work, all of the other restrictions listed by Plaintiff would certainly lead to restrictions on a person's ability to perform work like activities. Additionally, contends Plaintiff, his neck condition could reasonably support his complaints with respect to his hand impairments. Further, the Plaintiff never indicated how often he could lift 20-30 pounds but merely that he could lift that much at the time he completed the report. *See* Carradine, 360 F.3d at 755 (concluding ALJ "failed to consider the difference between a person's

being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week.)

The ALJ then offered an opinion that Plaintiff's testimony was suspect due to his past history of felonies and pointed to his "evasive" answer with respect to his testimony regarding his commercial drivers license ("CDL"). However, it is clear that the ALJ mischaracterizes the testimony provided by the Plaintiff. The Plaintiff testified at length that he was no longer able to pass the required physical to obtain his CDL, that he last drove in 2009 and at that time he was required to have a physical every three months to sustain his license. (Tr. 47-48) Plaintiff further opined that if he could pass the physical requirements, he believed he would be able to re-obtain his CDL. (Tr. 47) While confusing, this testimony was not evasive and the ALJ had ample time to question the Plaintiff regarding the status of his license and the Plaintiff was consistent with his responses.

Plaintiff further contends that the ALJ erred in finding that "the objective medical evidence in the file does not support a finding that the claimant's physical impairments are not disabling." (Tr. 22) In that analysis, the ALJ pointed to the MRI imaging which shows nerve root impingement and cord deformation. Id. Again, the ALJ focused on the fact that there was no EMG testing to confirm the complaints of radiculopathy. However, as noted *supra*, even the listing analysis for impairments of musculoskeletal system finds EMG testing merely "useful" in confirming what the MRI testing already confirmed. It is commonly known that nerve root impingement is a cause of pain, tingling, numbness and muscle weakness. The Plaintiff was seen monthly by his pain management specialist, Dr. Chao, making consistent complaints of pain. (Tr. 565-586, 650-726) At each visit, Dr. Chao performed a physical evaluation which showed pain in

Plaintiff's back, neck and right legs, decreased sensation in his lower limbs and positive straight leg raises. Id. Plaintiff points out that the ALJ failed to even address these findings by Dr. Chao in her decision, all of which as consistent with Plaintiff's complaints of pain, numbness and limitations.

Finally, the ALJ alleges that the claimant had "variable" compliance with his medication regime. Plaintiff notes that the ALJ points to no evidence in the record when she makes this statement nor explains how it is significant "in light of the MRI pathology." (Tr. 22) Plaintiff contends that this statement makes little sense as the MRI pathology confirms that there is a mechanical finding consistent with his complaints. Further, he had 18 visits with Dr. Chao since October 2010 for pain management and no records indicate that the Plaintiff was not compliant with the medication regime prescribed by Dr. Chao. Plaintiff does acknowledge some issues with consistency with his heart medications but it is unclear how this inconsistency with heart medication would have any impact on his neck and back issues.

While ALJ credibility determinations warrant deference, adjudicators are not entitled to cherry-pick facts that support a finding of non-disability while ignoring evidence supporting disability. Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted).

The Commissioner, in response, simply recites the ALJ's credibility findings and states that the ALJ is not compelled to "accept wholly the claimant's perception of disability". As the record in this case does not appear to support the ALJ's findings with respect to credibility, the court will remand for a review of this issue also.

<u>Conclusion</u>

Based on the foregoing, this case is REMANDED to the Commissioner for proceedings consistent with this Order.

Entered: January 23, 2015.

s/ William C.  Lee
William C. Lee, Judge
United States District Court
